1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RANDALL SCOTT CASH,

11          Plaintiff,              No. 2:10-cv-1082 EFB P

12      vs.

13   DOROTHY A. SWINGLE, et al.,
                                    ORDER AND
14          Defendants.             FINDINGS AND RECOMMENDATIONS
     _____/

15

16       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.   Defendants Swingle, Nepumaceno, Miranda, and Walker move for summary

18   judgment.  Dckt. No. 36.  For the reasons that follow, the undersigned recommends that the

19   motion be denied.

20   **I.      Background**

21       This action proceeds on the verified complaint filed May 3, 2010.  Dckt. No. 1.

22   Plaintiff's allegations are as follows, and the undersigned will note where the facts are

23   undisputed:  While housed at San Quentin State Prison ("SQSP"), plaintiff was treated for lower

24   back injury sustained in an automobile crash in 1984, including "extreme sciatica" in his right

25   ////

26   ////

1

1  hip and "protruded discs in L1-L5." *Id.* at 4.[1]  Dr. Wu at SQSP first prescribed "some low

2  dosage of anti-inflammatory medication," which was ineffective to treat the pain.  Following an

3  MRI in 2006, Dr. Wu prescribed Tramadol in increasing dosages, eventually reaching 150 mg in

4  the morning and 100 mg in the evening.  *Id.*  When the Tramadol became ineffective, Dr. Wu

5  prescribed "Methadone 10 mg BID."  *Id.*

6       Plaintiff also received three series of epidural injections from Dr. Pappas to treat his back

7  pain while at SQSP.  *Id.*  The first gave short-term pain relief, the second had no effect, and the

8  third "had actual detrimental effect causing other neurological problems in plaintiff's hands, feet

9  and legs." *Id.* at 4-5.  Dr. Pappas decided that further epidural injections would be futile.  *Id.* at

10  5.  Instead, plaintiff continued on pain medication.  *Id.*

11       Five days before plaintiff was transferred to High Desert State Prison ("HDSP"), Dr.

12  Pachynski at SQSP changed his medication from "Tramadol 100 mg BID" to "Methadone 5 mg

13  BID" and continued his prescription for Gabapentin (also referred to in the parties' papers by the

14  brand name Neurontin).  *Id.*

15       Plaintiff alleges that, upon his transfer to HDSP on December 9, 2008, he was cut off

16  from all his medication without being seen by a doctor.  *Id.*  It is undisputed that, on February

17  11, 2009, defendant Miranda (a physician's assistant) met with plaintiff to discuss his medical

18  condition and develop a treatment plan for him.  Dckt. No. 36-2, Defs.' Sep. Stmt. of Undisp.

19  Facts ISO Mot. for Summ. J. (hereinafter "DUF") 5; Dckt. No. 38, Pl.'s Resp. to DUF

20  (hereinafter "PUF") 5.  Defendant Miranda claims that, before the meeting, he reviewed

21  plaintiff's health record to determine his medical condition.  DUF 6; *see* PUF 6 (plaintiff

22  responds that he has no way of knowing whether this asserted fact is true).  Plaintiff alleges,

23  however, that defendant Miranda diagnosed him with arthritis after a cursory review of his

24  health record and a two-minute interview with him.  Dckt. No. 1 at 7.  Plaintiff alleges that,

25

26       [1] Page numbers cited herein refer to those assigned by the court's electronic docketing
   system and not those assigned by the parties.

1   based on that diagnosis, which differed from the diagnoses reached by plaintiff's caregivers at

2   SQSP, defendant Miranda denied him all pain medication other than Gabapentin and Naprosyn,

3   which did not treat his protruded discs.  *Id.* at 7; PUF 9-10.

4          For his part, defendant Miranda declares simply that his review of plaintiff's health

5   record led him to conclude that plaintiff "did not have a medical condition that required him to

6   be prescribed Tramadol and Methadone."  DUF 7; Dckt. No. 36-3, Decl. of R. Miranda ISO

7   Defs.' Mot. for Summ. J. (hereinafter "Miranda Decl."), ¶ 8.  The parties do not dispute that

8   defendant Miranda instead prescribed plaintiff Naprosyn and Gabapentin and referred him to a

9   physiatrist (physical therapist) and for possible epidural injections.  DUF 9-10; PUF 9-10.

10  Plaintiff claims that he told defendant Miranda that there was no point in taking Gabapentin or

11  doing physiatry because they did not relieve his pain and that epidural injections were also

12  unhelpful and actually caused harm.  PUF 13-14.

13         It is undisputed that plaintiff did not appear at the "pill line" to receive his medications in

14  March, May, June, and December 2009.  DUF 15, 17, 18; PUF 15, 17, 18.  In addition, plaintiff

15  requested cancellation of his physiatry appointments.  DUF 16; PUF 16.

16         Plaintiff appealed defendant Miranda's treatment decisions.  Dckt. No. 1 at 5.  Defendant

17  Nepumaceno, a medical doctor, completed the first level appeal, approving of defendant

18  Miranda's decision without examining plaintiff.  *Id.*  At the second level, defendant Swingle,

19  also a medical doctor, again approved that decision without examining plaintiff.  *Id.* at 6.  At the

20  third and final level of appeal, defendant Walker (not a medical doctor but Chief of California

21  Prison Health Services, Office of Third Level Appeals, Health Care), reviewed the appeal.  *Id.* at

22  7.  Plaintiff does not indicate the result of the third level review, but complains that it took 13

23  months, during which time he suffered pain from not receiving the proper medications.  *Id.*

24  **II.     Summary Judgment Standards**

25         Summary judgment is appropriate when there is "no genuine dispute as to any material

26  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-

24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

1    for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

2    demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

3    that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

4    477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

5        The court does not determine witness credibility.  It believes the opposing party's

6    evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

7    *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

8    proponent must adduce evidence of a factual predicate from which to draw inferences. *American*

9    *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

10    dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

11    at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

12    (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

13    trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*,

14    475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

15        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

16    show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

17    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

18    'genuine issue for trial.'" *Id.*  If the evidence presented and any reasonable inferences that might

19    be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

20    issue. *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

21    dispute over an issue that is determinative of the outcome of the case.

22        On September 22, 2010, the court informed plaintiff of the requirements for opposing a

23    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dckt. No. 13; *see Rand v.*

24    *Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and

25    *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

26    ////

**III.     Defendants' Objections to Plaintiff's Evidence**

Defendants object to each item of evidence submitted by plaintiff for lack of foundation, hearsay, and lack of authentication.  Dckt. No. 41.  However, it cannot reasonably be disputed that the evidence offered by plaintiff consists simply of excerpts of his prison medical records, created and maintained by prison officials, and defendants do not contend otherwise.  Because there is no apparent dispute as to the accuracy of the evidence submitted, the request to exclude the evidence is denied for purposes of this motion.  Plaintiff will have time to authenticate the documents should he intend to introduce them at trial.  *Cooper v. Kaur*, No. CIV S-10-1057 GEB DAD P, 2012 U.S. Dist. LEXIS 1877, at *2-3 (E.D. Cal. Jan. 6, 2012) ("[I]t would be an abuse of this court's discretion to refuse to consider [unauthenticated medical records] offered by a pro se plaintiff at the summary judgment stage."); *Fryman v. Traquina*, No. CIV S-07-2636 JAM DAD P, 2008 U.S. Dist. LEXIS 121357, at *32-33 n.5 (E.D. Cal. Oct. 24, 2008), adopted by 2009 U.S. Dist. LEXIS 5824 (E.D. Cal. Jan. 15, 2009) (same); *see also Jonas v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (reversing and remanding with instructions to consider evidence offered by the pro se plaintiff in his objections to the findings and recommendations). Additionally, plaintiff's evidence and defendants' objections cannot be divorced from the nature of this proceeding, i.e., summary judgment, in which defendants are the moving parties.  *See Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110, 1118-1124 (E. D. Cal. 2006).  The portion of Rule 56  pertaining to supporting affidavits and records provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a from that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  However, on summary judgment, the non-moving party's evidence need not be in a form that is admissible at trial.  *See Burch*, 433 F. Supp. 2d at 1119 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Instead, a court is concerned with the admissibility of the contents of the evidence.  *Id.; see also, Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (holding that the district court properly considered a diary which defendants moved to strike as inadmissible hearsay because,

7

1  "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.

2  We focus instead on the admissibility of its contents.").  Thus, on summary judgment,

3  "objections to the *form* in which the evidence is presented are particularly misguided where, as

4  here, they target the non-moving party's evidence." *Burch*, 433 F. Supp. 2d at 1119.

5  Accordingly, as long as a party submits evidence which, regardless of its form, may be

6  admissible at trial, it may be considered on summary judgment.  *Id.* at 1120.

7       The court now turns to defendants' argument that plaintiff's evidence lacks a proper

8  foundation or authentication.  In order properly to support or oppose summary judgment, the

9  party relying on affidavits and records must lay a proper foundation.  *Beyne v. Coleman Sec.*

10 *Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).  But defendants have not seriously disputed the

11 authenticity of the copies of prison records plaintiff submits.  "[W]hether the authentication

12 requirement should be applied to bar evidence when its authenticity is not actually disputed is,

13 however, questionable." *Burch*, 433 F. Supp. 2d at 1120. "[W]here the objecting party does not

14 contest the authenticity of the evidence submitted, but nevertheless makes an evidentiary

15 objection based on purely procedural grounds," then the court should consider the evidence.  *Id.*

16 In such a situation, it would appear equally probable that the documents are what they purport to

17 be as it is that they are not.  *See id.*  This is particularly true where, as here, the copies are simply

18 excerpts from plaintiff's prison medical records, created and maintained and previously

19 produced to plaintiff by prison officials who can readily compare the originals and submit a

20 properly supported objection if it is discovered that a copy is not authentic.  Defendants have not

21 done so and their objections are overruled.

22 **IV.   Analysis**

23       As noted in the court's screening order, plaintiff has stated claims against defendants for

24 deprivation of necessary pain medication in violation of the Eighth Amendment.  As plaintiff

25 complains only that he was denied medication he was receiving at SQSP prior to his transfer to

26 ////

1    HDSP, and the only medication that was not continued at SQSP was methadone[2], the court must

2    determine whether there is a triable issue of material fact that defendants violated the federal

3    Constitution when they denied plaintiff a prescription for methadone.

4           The Eighth Amendment of the U.S. Constitution protects prisoners from inhumane

5    methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*,

6    465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a

7    conditions of confinement claim, and only those deprivations denying the minimal civilized

8    measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment

9    violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

10          To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

11   plaintiff must establish that he had a serious medical need and that the defendant's response to

12   that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

13   *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to

14   treat plaintiff's condition could result in further significant injury or the unnecessary and wanton

15   infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was

16   (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer*

17   *v. Brennan*, 511 U.S. 825, 828 (1994).

18          Neither a defendant's negligence nor a plaintiff's general disagreement with the

19   treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106;

20   *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d

21   390, 394 (9th Cir. 1988). Evidence that medical caregivers disagreed as to the need to pursue

22   one course of treatment over another is also insufficient, by itself, to establish deliberate

23   indifference. *Jackson*, 90 F.3d at 332. Rather, the plaintiff must show that the course chosen by

24

25          [2] Plaintiff's medical records indicate that he was not receiving Tramadol at the time of
     the transfer, and plaintiff states in his complaint that the Tramadol had become ineffective by
26   this time. Dckt. No. 1 at 4; Dckt. No. 38 at 77.

1   the defendants was medically unacceptable under the circumstances.  *Jackson*, 90 F.3d at 332.

2   When a prisoner alleges a delay in medical treatment, he must show the delay caused an injury.

3   *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX*

4   *Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *see also Wood v.*

5   *Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (several day delay in treatment did not

6   violate Eighth Amendment where there was no emergency and given plaintiff's condition, i.e., a

7   severe shoulder injury, the only remedy immediately available was painkillers).

8        Finally, "a prison official can violate a prisoner's Eighth Amendment rights by failing to

9   intervene" to prevent a violation imposed by someone else.  *Robins v. Meecham*, 60 F.3d 1436,

10  1442 (9th Cir. 1995).  A defendant-officer may be held liable for failing to intervene when he

11  had enough time to observe what was happening and to intervene and prevent or curtail the

12  violation, but failed to do so.  *See Lanier v. City of Fresno*, 2010 U.S. Dist. LEXIS 130459, 2010

13  WL 5113799, at *6 (E.D. Cal. Dec. 8, 2010) (citations omitted).

14       Defendants make no argument that plaintiff does not suffer from a serious medical need.

15  Instead, defendants argue that the undisputed facts show that they were not deliberately

16  indifferent to plaintiff's medical needs.  First, defendants argue that they provided plaintiff with

17  appropriate treatment by providing Gabapentin, Naprosyn, and referrals for physiatry and

18  possible epidural injections.  Plaintiff's evidence, however, is that methadone was necessary to

19  control his pain and that the treatments prescribed at HDSP were either wholly ineffective or

20  ineffective unless combined with methadone.  Dckt. No. 38 at 29 (health record indicating

21  plaintiff complained in October 2008 that his pain was worse after epidural injections and that

22  the Tramadol and Gabapentin were not working), 31 (health record indicating that plaintiff

23  reported worse pain in first ten days following epidural injection; accordingly, despite objective

24  criteria indicating improvement following the injection, the physician "would not recommend a

25  repeat epidural injection.").  He attests that he told defendants that the prescribed treatments

26  would not work to control his pain.  Dckt. No. 1 at 5.  His testimony, if believed, coupled with

1    the medical records is sufficient to raise a triable issue of material fact as to whether the course

2    of treatment defendants pursued was acceptable under the circumstances. *See Jackson*, 90 F.3d

3    at 332.

4         Defendants next argue that there is no evidence that plaintiff suffered harm from that

5    course of treatment, and imply that plaintiff himself is responsible for any harm he suffered

6    because he repeatedly refused the treatment.  However, plaintiff's verified complaint attests that

7    he suffered extreme pain as a result of not receiving the methadone. Dckt. No. 1 at 7.  Moreover,

8    as mentioned above, plaintiff's health records provide evidence that epidural injections and

9    Gabapentin were not effective at treating his pain.  Thus, there is a dispute as to whether his

10   refusal to accept these treatments, rather than defendants' refusal to provide methadone, caused

11   the continued pain.  In addition, defendants do not address at all plaintiff's allegation in his

12   complaint that he was wholly without treatment for his pain during the first two months

13   following his transfer to HDSP.  Accordingly, plaintiff has raised a triable issue as to whether

14   defendants' conduct, not plaintiff's, caused the harm complained of in the complaint.

15        Defendants next argue that there is no evidence that defendant Walker failed to

16   appropriately respond to plaintiff's medical needs.  The argument is mistaken.  Plaintiff's

17   verified complaint alleges that defendant Walker did not respond to his appeal for 13 months,

18   during which time he suffered pain.  It is undisputed that defendant Walker is not a doctor.  The

19   court agrees that defendant Walker's mere review of the appeal does not show deliberate

20   indifference because defendant Walker lacked the specialized knowledge to recognize whether

21   the decisions made by the other three defendants would cause plaintiff to suffer.  However, a

22   factfinder could conclude that defendant Walker failed to adequately respond to plaintiff's

23   medical need by leaving the appeal in limbo for 13 months, during which time plaintiff did not

24   receive methadone.  Accordingly, there is a triable issue as to whether defendant Walker was

25   deliberately indifferent by taking 13 months to review plaintiff's healthcare appeal.

26   ////

1    Defendants next argue that the evidence shows merely a disagreement between plaintiff

2    and defendants or plaintiff's SQSP caregivers and defendants as to the appropriate course of

3    treatment for plaintiff.  Plaintiff's evidence, however, is that the course chosen by defendants

4    was not simply one of many acceptable available courses of treatment, but rather one that would

5    provide him with no pain relief at all for his disc protrusion and only some pain relief for his

6    sciatica pain.  Dckt. No. 1 at 5.  Plaintiff's evidence further indicates that the course of treatment

7    chosen by defendants had been tried earlier and failed, which was evident from his medical

8    record and which he informed defendants of.  Dckt. No. 38 at 28, 31, 33, 34.  Accordingly, there

9    is a triable issue of fact regarding whether the treatment chosen by defendants was medically

10   unacceptable under the circumstances.

11   Defendants lastly argue that they are entitled to qualified immunity because the

12   undisputed facts show they did not violate the Constitution and/or because it would not have

13   been clear to a reasonable official under the circumstances that the conduct alleged was

14   unlawful.  *See Saucier v. Katz*, 533 U.S. 194 (2001).  As discussed above, the undersigned

15   concludes that defendants have not demonstrated the absence of disputed material facts

16   regarding the Eighth Amendment violation alleged in this case.  Taking the evidence submitted

17   in the light most favorable to plaintiff, it would have been clear to a reasonable official that

18   offering medical treatment while knowing that the treatment had been shown to be ineffective

19   and, at the same time, denying effective treatment would violate the Constitution.  Therefore,

20   defendants have not established that they are entitled to summary judgment based on qualified

21   immunity.

22   **IV.    Order and Recommendation**

23   Accordingly, it hereby ORDERED that:

24   1.  Defendants' October 27, 2011 objections to plaintiff's evidence (Docket No. 41) are

25   overruled; and

26   2.  The Clerk is directed to randomly assign a United States District Judge to this case.

1    Further, it is hereby RECOMMENDED that defendants' September 30, 2011 motion for

2  summary judgment be denied.

3    These findings and recommendations are submitted to the United States District Judge

4  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5  after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

8  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

9  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10 Dated:  June 27, 2012.

11

12                                    EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

13